**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13 CR 312** |
| | ) | |
| **EDWARD NOVAK, ROY PAYAWAL,** | ) | |
| **VENKATESWARA KUCHIPUDI,** | ) | |
| **and CLARENCE NAGELVOORT** | ) | |

**ORDER ON CERTAIN ASPECTS OF
GOVERNMENT'S MOTION TO ADMIT CERTAIN EVIDENCE**

This order concerns some, but not all, of the government's motion to admit

certain evidence [docket no. 508]. The parties are directed to appear at 2:00 this

afternoon for a status hearing.

**1.     Dr. Kuchipudi's sending of patients to Sacred Heart regardless of proximity**

The third point in the government's motion is its request to admit evidence that

Dr. Kuchipudi and Sacred Heart Hospital administrators arranged for his patients to be

transported to the hospital for admission irrespective of their proximity to the hospital.

As the Court understands it, this evidence largely involves patients of Dr. Kuchipudi who

resided in nursing homes. He and the other defendants are claimed to have arranged

to transport them to Sacred Heart's emergency room despite the fact that other hospital

emergency rooms were much closer to the nursing homes where they resided. The

defendants allegedly facilitated this by characterizing the patients as being directly

admitted to Sacred Heart even though they were being brought to the emergency room

purportedly because they needed immediate attention.

The indictment includes at least one allegation on this point. *See* Superseding Indictment ¶ 6 (alleging that the defendants "implemented procedures designed to ensure that patients were transported from nursing homes and facilities directly to Sacred Heart irrespective of the patients' proximity to Sacred Heart and medical necessity"). Thus this is not, contrary to Dr. Kuchipudi's argument, "other act" evidence that is admissible, if at all, only via Federal Rule of Evidence 404(b). The Court agrees with the government that this is relevant and admissible evidence of the alleged *quid pro quo* scheme with Dr. Kuchipudi was carried out and of the benefits that Sacred Heart received on its end of the scheme. Dr. Kuchipudi's argument that this alleged practice is commonly followed and is not illegal may affect the weight to be given to this evidence, but it does not affect its admissibility. The evidence is relevant and not unfairly prejudicial in a way that outweighs its significant probative value. The objection to its admission is overruled.[1]

**2.     Dr. Kuchipudi's referral of patients irrespective of medical need**

For largely the same reasons, the Court overrules the objection to the government's evidence that Dr. Kuchipudi sent patients to Sacred Heart irrespective of their need for treatment, an allegation referenced in the same paragraph of the indictment just quoted. This is point 4 of the government's motion. This evidence likewise tends to show how the defendants carried out the alleged scheme and the lengths Dr. Kuchipudi allegedly went to in order to hold up his end of the charged arrangement. There is no question that the evidence that the government summarizes

---

[1] The Court will hold the government to its commitment not to argue that this resulted in actual harm to any patients and will also exclude evidence of such harm. *See* Gov't's Reply at 34.

in this regard is prejudicial, but the prejudice is not unfair, and unfair prejudice is what Federal Rule of Evidence 403 concerns.[2]  The Court also does not anticipate, based on the government's summary of the evidence it intends to offer in this regard, that admission of this evidence will result in a mini-trial regarding medical malpractice, as Dr. Kuchipudi contends.  And the testimony of the Sacred Heart physicians who saw and treated these patients about whether they required treatment does not appear to the Court to amount to improper opinion evidence, assuming the government lays the necessary foundation for these witnesses' testimony.

### 3. Dr. Kuchipudi's billing to Medicare for work done by other practitioners

In the second point addressed in its motion, the government seeks to admit evidence that Dr. Kuchipudi billed for the services of other practitioners—physician's assistants (PAs), advanced nurse practitioners (ANPs), and a physician—whose salaries were paid by Sacred Heart.  The government argues that this is direct evidence regarding the charged crimes, not other act evidence.  Specifically, the government contends, this is evidence tending to show the benefit that Dr. Kuchipudi received in return for referring patients to Sacred Heart.

Dr. Kuchipudi contends that this is other act evidence, inadmissible under Rule 404(b), because he is not charged with fraudulent billing.  The Court was initially persuaded by the government's argument that the contention about billing is part of the charges against Dr. Kuchipudi.  In re-reviewing the briefs, however, the Court noted that in making this response to Dr. Kuchipudi's argument, the government did not cite to any

---

[2] Again, the government has committed not to argue that patients were harmed, *see* Gov't's Reply at 37, and the Court will hold the government to this and also will exclude evidence of actual harm to any particular patients.

pertinent allegations in the superseding indictment. *See* Gov't's Reply at 13-14. So the Court looked for itself.

It turns out that Dr. Kuchipudi is partly correct and partly incorrect. The indictment alleges that Sacred Heart agreed to hire medical professionals and pay their salary and then assign them to work for non-employee physicians (like Dr. Kuchipudi) to induce them to refer patients to the hospital and compensate them for past referrals. *See* Superseding Indictment ¶¶ 7-8. More specifically, the indictment discusses the hospital's hiring and payment of "Employee A," a PA; a person identified as "Employee B"; and "Employee C," an APN; and the hospital's assignment of these employees to perform services for Dr. Kuchipudi at various locations. *See id.* ¶¶ 9, 11-14. The indictment alleges that "[t]his was a benefit to Kuchipudi because Sacred Heart paid for the work [these employees] performed for Kuchipudi." *Id.* ¶¶ 11, 12 & 14. In other words, the indictment alleges that the benefit to Dr. Kuchipudi was Sacred Heart's payment of these employees, not (or not also) that Dr. Kuchipudi himself billed for their services. In short, the allegations regarding Employees A, B, and C say nothing about Dr. Kuchipudi billing for their work. Nor could the Court find allegations elsewhere in the indictment that indicated that Dr. Kuchipudi had billed for these persons' work.

The indictment's allegations regarding another hospital employee, a physician identified as "Physician C," are different. The indictment alleges that Sacred Heart agreed to pay Physician C to treat Dr. Kuchipudi's patients at the hospital on weekends and other occasions when he could not or did not treat them himself. It further alleges that "Kuchipudi billed insurers, including Medicare and Medicaid, for the services that Physician C provided for the treatment of Kuchipudi's patients. This was a benefit to

4

Kuchipudi because Sacred Heart paid for the work Physician C performed for Kuchipudi." *Id.* ¶ 17. Thus the allegation about billing by Dr. Kuchipudi is squarely made with regard to Physician C.

In sum, the government's evidence that Dr. Kuchipudi billed for Physician C's work involves a charged act, but its evidence that he billed for the work of Employees A, B, and C involves uncharged acts. The indictment does not allege that Dr. Kuchipudi's billing for the work of Employees A, B, and C is part of the benefit he received. And given the difference in wording as compared with the allegations about Physician C, one can only conclude that the omission was purposeful. The Court will therefore evaluate under Rule 404(b) the evidence regarding Dr. Kuchipudi's alleged billing for the services of Employees A, B, and C.

Though the Court considers it important to evaluate evidence under the appropriate rules, the fact that the evidence about Dr. Kuchipudi's billing for the work of Employees A, B, and C is evaluated under Rule 404(b) does not eliminate its admissibility. Dr. Kuchipudi's primary contention is that this evidence is about a separate, uncharged scheme involving Medicare/Medicaid fraud and that its primary effect is to show that he is a bad person or has a propensity to commit crimes. Were that the case, the evidence would in fact be inadmissible. To admit evidence covered by Rule 404(b), it must be relevant for a legitimate purpose other than showing a propensity to commit crimes. *See United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014).

The government argues that the evidence is relevant to show Dr. Kuchipudi's efforts to conceal the alleged kickbacks-for-patients scheme. This argument is not

developed by the government—in other words, it is conclusory—and the Court views it as strained.  By itself, the concealment claim would not warrant admission of the billing evidence.

The government's other argument fares better.  It contends that the ability to bill for the other practitioners' work was part of the benefit that Dr. Kuchipudi received as part of the kickback scheme.  This, in the Court's view, is relevant to show Dr. Kuchipudi's motive even if his billing for the work of Employees A, B, and C is not referenced in the indictment.  In other words, the fact (assuming it is a fact) that Dr. Kuchipudi was able to bill and make money for the work of these Sacred Heart employees is admissible to show his reason, or at least a reason, for entering into the scheme.  This is highly probative evidence of Dr. Kuchipudi's motive to engage in the charged offenses, because it is part of the benefit he allegedly derived, whether or not it was part of the benefit he allegedly bargained for.  The Court acknowledges that the evidence the government will offer might also support charges of Medicare/Medicaid fraud, which the indictment does not include.  But this does not make the evidence any less relevant regarding the charged offenses.

Dr. Kuchipudi argues, in essence, that his claimed billing for other professionals' work as though it was his own is not a necessary part of the government's case.  To put it another way, the charged offenses arguably could have been committed—and perhaps the government will argue that they were committed—simply by the hospital providing the other professionals at its expense to work on his cases, even if Dr. Kuchipudi did not bill for their work as his own.  Perhaps so, but that would not render

irrelevant or less probative evidence that tends to show that Dr. Kuchipudi added this frosting to the cake.

Dr. Kuchipudi also argues that someone in his position could obtain the proceeds of fraudulent billing even without a kickbacks-for-patients scheme. Again, this is beside the point. The government's theory is that the provision of other medical providers for whose services Dr. Kuchipudi could bill was a key part of his incentive to enter into the alleged kickbacks-for-patients scheme. Thus the fact that a fraud could have been committed without also paying kickbacks is of no consequence.

Dr. Kuchipudi also objects to this evidence pursuant to Federal Rule of Evidence 403. The premise of this argument, however, is that this evidence is irrelevant and has no probative value regarding the charged offenses. *See* Kuchipudi Resp. to Gov't's Mot. at 18. That is incorrect; the evidence has very significant probative value, for the reasons the Court has described. The evidence may be prejudicial to Dr. Kuchipudi, but given its relevance the Court sees no viable argument that this involves *unfair* prejudice, which is what Rule 403 concerns. Dr. Kuchipudi also contends that admission of this evidence would turn the case into a mini-trial involving Medicare fraud, which would be a sideshow and a significant detour from the charged offenses. In this regard, the Court will hold the government to its commitment, made in its motion, that it "will not argue to the jury that defendant Kuchipudi wrongfully 'up-coded' his Medicare billing." Gov't 's Corrected Mot. to Admit Certain Evid. at 11-12 n.8. (The Court understands this as a commitment not simply not to argue that point, but also not to present evidence tending to show that Dr. Kuchipudi engaged in up-coding. See also Gov't's Reply at 18-19.) Though this certainly does not eliminate Dr. Kuchipudi's "Medicare fraud" concern, it will

mean that the evidence regarding his arguable inappropriate billing will be confined to the government's contention that part of the benefit Dr. Kuchipudi got in return for referring patients was the ability to bill for the services of the other professionals whose salaries Sacred Heart paid. The Court also finds unpersuasive Dr. Kuchipudi's argument that the government's evidence on these points is so complicated that it will confuse or mislead the jury or take up undue time during the trial.

The analysis regarding Dr. Kuchipudi's alleged billing for the work of Physician C, which unlike the matters just discussed *is* alleged in the indictment, is essentially the same. The evidence is relevant to show Dr. Kuchipudi's motive, and this particular evidence is also admissible to show how the charged scheme was carried out. And the Rule 403 analysis comes out the same as discussed earlier.

For these reasons, the Court overrules the objection to the admission of evidence regarding Dr. Kuchipudi's billing for the work of Sacred Heart employees.

**4.     Dr. Kuchipudi's solicitation of a second hospital**

In the first point argued in its motion, the government asks the Court to admit evidence that during the period of the charged conspiracy, Dr. Kuchipudi solicited another hospital to supply a professional medical practitioner to service his patients with the understanding that he would bill for the practitioner's services. The government also wants to introduce evidence that in the course of Dr. Kuchipudi's discussions with the other hospital, it obtained and provided to him an opinion of counsel that the arrangement was likely illegal.

There is no viable argument—and in fact the government does not attempt to argue—that this evidence is admissible against Novak, Payawal, or Nagelvoort. There

is no evidence that they were even aware of, let alone involved in, Dr. Kuchipudi's dealings with the other hospital. Rather, this evidence is admissible, if at all, only against Dr. Kuchipudi. And contrary to the government's rather preposterous suggestion, there is no straight-faced argument that this is, as to Dr. Kuchipudi, "direct evidence of the charged offenses." Gov't's Corrected Mot. to Admit Certain Evid. at 3. Nothing in the indictment begins to hint that the charges against Dr. Kuchipudi involve anything other than his dealings with Sacred Heart Hospital. Thus this evidence is admissible against Dr. Kuchipudi, if at all, only under Federal Rule of Evidence 404(b).

Because Rule 404(b) governs, the government must show that this evidence is properly admissible for some legitimate basis other than to show that Dr. Kuchipudi has a propensity to commit crimes generally, or a propensity to commit crimes like those charged against him. Rather, Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856. Rule 404(b) requires exclusion of evidence "if its relevance to another purpose is established only through the forbidden propensity inference." *Id.*

Evidence regarding Dr. Kuchipudi's receipt of the legal opinion is relevant and properly admissible under Rule 404(b) to show his intent with regard to the charged offenses. The charged kickback offenses are specific-intent crimes that require knowledge of illegality of the arrangements. Evidence that, before or during the period relevant to the charges, Dr. Kuchipudi was given a legal opinion that a similar proposed arrangement was likely illegal bears directly on his intent. Dr. Kuchipudi argues that the arrangement being discussed with the other hospital was not the same as the alleged arrangement with Sacred Heart that is directly at issue, and he points out that the legal

9

opinion from the other hospital says not that the arrangement discussed *was* illegal but rather only that it was *likely* illegal. These differences bear on the weight to be given to this evidence, not its admissibility. In sum, if all the government were offering was the legal opinion and, perhaps, some highly circumscribed bare minimum of evidence needed to explain its context, then the Court would overrule Dr. Kuchipudi's objection.

The government, however, seeks far more than this; it wants to put in evidence regarding the dealings that Dr. Kuchipudi had with the other hospital that preceded and surrounded his receipt of the legal opinion. This evidence may well suggest that Dr. Kuchipudi was venal and grasping, but it shows nothing that is relevant to the charged offenses that is permissible under Rule 404(b). Rather, evidence of Dr. Kuchipudi's alleged attempt to obtain from another hospital an arrangement similar to or better than the one that he obtained from Sacred Heart is, purely and simply, inadmissible propensity evidence. No viable argument to the contrary can be advanced. Indeed, in arguing the point in its reply after Dr. Kuchipudi challenged the evidence on this exact basis, the government talks not about the underlying solicitation but rather about Dr. Kuchipudi's receipt of the legal opinion from the other hospital. *See* Gov't Reply at 4-6. And this, in the Court's view, lays bare what the government is attempting to do: use the admissible intent evidence regarding the other hospital (Dr. Kuchipudi's receipt of the legal opinion) to bootstrap its way into admitting the inadmissible propensity evidence (the course of his dealings with the other hospital). The Court will not permit this. The evidence of those dealings is inadmissible against Dr. Kuchipudi; all that is admissible against him is his receipt of the legal opinion and perhaps, as the Court has

stated, some highly circumscribed bare minimum of evidence needed to explain its context.

With that in mind, the Court turns back to the other defendants. As indicated earlier, the government makes no attempt to argue that this evidence is admissible against them. It contends, however, that any prejudice they would suffer from admission of the evidence is not unfair. That suggests a Rule 403 analysis, which misses the point; Rule 403 deals with evidence that is otherwise admissible, and this evidence is inadmissible as to Novak, Payawal, and Nagelvoort. The real question is whether the prejudice they would suffer from admission at a joint trial of evidence involving another defendant that is inadmissible against them can be cured or avoided by limiting instructions. The Court is not persuaded that this is possible. The evidence in question involves highly probative and very prejudicial evidence of the illegality of the charged arrangement, or at least a very similar arrangement. It comes from an outside and independent source, namely the outside attorneys for the other hospital. One cannot rationally expect that a jury given evidence of this type would be able to cabin its consideration of it to just one defendant, even if instructed to do so. The risk of unfair prejudice against the other defendants is far too high, and the Court is unwilling to require them to bear this risk.

At the second session of the pretrial conference, the government argued that evidence regarding legal opinions that the other defendants received from outside counsel for Sacred Heart also will be admitted and that this removes or minimizes the risk of prejudice to the defendants other than Dr. Kuchipudi. The Court is unpersuaded. It has reviewed the documents provided by the government regarding the

communications with outside counsel for Sacred Heart, and they are significantly more equivocal and less pointed on the question of illegality than the opinion the other hospital obtained and then allegedly provided to Dr. Kuchipudi. But even were that not the case, the nature of the evidence in question—an independent legal opinion regarding the legality an arrangement very similar to what the government contends happened at Sacred Heart—has such a direct bearing on the intent issue that, in the Court's view, a limiting instruction cannot cure the problem vis-à-vis the defendants other than Dr. Kuchipudi.

As the Court has indicated, the legal opinion evidence is admissible against Dr. Kuchipudi, so the Court overrules his objection to the evidence. But because of its conceded inadmissibility against the other defendants, and for the other reasons just discussed, the government is going to have to make a choice. If it wants to introduce the legal opinion against Dr. Kuchipudi, he will have to be tried separately. The Court understands that the defendants are jointly charged with conspiracy and other offenses, but that does not make a joint trial automatic. *See, e.g., United States v. Davis*, 838 F.2d 909, 916 (7th Cir. 1988) (before admitting in a joint trial other act evidence concerning a particular defendant, the court must weigh the risk of unfair spillover prejudice against other defendants). In this case, the advantages of a joint trial are outweighed by the very high risk of unfair prejudice to the other defendants from admission of the legal opinion obtained by the other hospital. As a result, the case will proceed as a joint trial only if the government foregoes the admission of this evidence. *United States v. Figueroa*, 618 F.2d 934, 944-45 (2d Cir. 1980). To be clear, the Court is not excluding the evidence, but rather is simply advising the government that if it

12

actually wishes to use the evidence, the Court will allow this as to Dr. Kuchipudi but will sever his trial from that of the other defendants.[3]

### Conclusion

The government rules on points I, II, III, and IV of the government's motion to admit certain evidence [docket no. 508] as stated above.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 22, 2015

---

[3] The Court overrules Dr. Kuchipudi's objection that admission of this evidence violates his right to cross-examine the witnesses against him because the government is not calling the author of the legal opinion. As the government argues, the memo is not offered for its truth but rather as evidence of Dr. Kuchipudi's state of mind.